UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LISA JARAMILLO, KIM CHAVEZ, and
ANN CHAVEZ

Plaintiffs,

v. No. 09-634 JCH/WDS

ROGER BUSTAMANTE, ARLENE HICKSON,
ROBERT ULIBARRI, LINDA HERNANDEZ,
LADONNA CECIL, TRACY JONES,
in their individual capacities,
CORRECTIONAL MEDICAL SERVICES, and
CORRECTIONS CORPORATION OF AMERICA,

Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendants Corrections Corporation of America's ("CCA's"), Arlene Hickson's, Robert Ulibarri's, and Linda Hernandez's (collectively, the "CCA Defendants'") *Motion for Summary Judgment* (Doc. 176 Ex.1).[1] Plaintiffs Lisa Jaramillo, Kimberly Chavez, and Ann Chavez[2] bring this action under 42 U.S.C. § 1983 for First Amendment retaliation and violations of their civil rights under the Eighth and Fourteenth Amendments; they further assert claims for negligence and breach of contract. Plaintiffs, who are inmates at the New Mexico Women's Correctional Facility ("NMWCF"), allege that Roger Bustamante, who is not a party to the instant motion, sexually assaulted them while employed as a nurse at NMWCF. Plaintiffs further allege, *inter alia*: individual

---

[1]While the CCA Defendants style the instant motion as a motion for summary judgment, it is in fact a motion for *partial* summary judgment. The CCA Defendants do not move for summary judgment on Count IX for breach of contract against CCA. The Court has previously denied CCA's notice of joinder in CMS' motion for summary judgment on Plaintiffs' breach of contract claim against CMS.

[2]Plaintiff Mary Lou Collins was terminated from this action on February 16, 2011.

Defendants retaliated against them for reporting Bustamante's and another prison employee's sexual misconduct by conducting a sham investigation and wrongfully imposing sanctions on them; Defendants failed to exercise reasonable care in providing for inmate safety; and corporate Defendants CCA and Correctional Medical Services, Inc. ("CMS") breached the service contracts under which they performed services at NMWCF, which required them to take all reasonably necessary steps to prevent reasonably foreseeable harm to inmates. The Court, having considered the motion, briefs, exhibits, and relevant law, and being otherwise fully informed, finds that the CCA Defendants' motion should be granted in part and denied in part.

## FACTUAL BACKGROUND

The background relevant to this action has been set forth fully by the Court in its decision on the CMS Defendants' *Motion for Partial Summary Judgment* (Doc. 171), and is incorporated herein.

## LEGAL STANDARD

***Summary Judgment***

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be rendered "where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 725 (10th Cir. 2006); *see also* Fed. R Civ. P. 56(c)(2). The moving party bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation and marks omitted). Once this burden has been met, "the burden shifts to the nonmoving party

to show that there is a genuine issue of material fact. The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." *Id. See also Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1993). It is not enough for the nonmoving party to "rest on mere allegations or denials of his pleadings" to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also West v. New Mexico Taxation and Rev. Dept.*, No. Civ. 09-0631, U.S. Dist. LEXIS 131626, at *42 (D.N.M., Oct. 31, 2010) ("[n]or can a party avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation") (internal quotation and marks omitted). In reviewing a motion for summary judgment, the court must "examine the factual record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1184 (10th Cir. 2010). Its function at this stage is "not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 243.

## DISCUSSION

### I. Plaintiffs' Supervisory Liability Claim Against CCA

The CCA Defendants contend that CCA is entitled to summary judgment on Plaintiffs' claim that CCA is liable under 42 U.S.C. §1983 for "[i]nsufficient training, supervision and procedures, and a complete failure . . . to prevent ongoing conduct" by Bustmante. (Doc. 1 Ex. A, Cplt. ¶ 142). Plaintiffs respond that the risk of rape in the NMWCF was so pervasive that it must have been known to CCA, who failed to take reasonable steps to address it.

A plaintiff seeking to establish the §1983 liability of a corporation that contracts with the State cannot do so under a theory of *respondeat superior*, but rather must establish that the

corporation "had an official [ ] policy of some nature, that was the direct cause or moving force behind the constitutional violations" that are alleged to have occurred. *Dubbs v. Head Start, Inc*., 336 F.3d 1194, 1215 (10th Cir. 2003) (internal quotation and marks omitted); *see also Monell v. New York City Dept. Of* Soc. Servs., 436 U.S. 658, 691 (1978); *DeVargas v. Mason & Hanger-Silas Mason Co, Inc*., 844 F.2d 714, 723 (10th Cir. 1988). Liability for a policy or custom shown to be the moving force behind a constitutional violation is predicated on the corporation's deliberate indifference to the safety of an individual or class, in this case the inmate Plaintiffs. *Berry v. City of Muskogee*, Okla., 900 F.2d 1489, 1498 (10th Cir. 1990). In order to establish that an entity was deliberately indifferent to inmate safety, the Tenth Circuit has held that a plaintiff must, first, show that the "had actual knowledge of the specific risk of harm to [the inmate] or that the risk was so substantial or pervasive that knowledge can be inferred"; second, that the entity "failed to take reasonable steps to avert the harm"; and third, that the entity's "failure to take such measures in light of its knowledge, actual or inferred, justifies liability for the attendant consequences of its conduct, even though unintended." *Id.* (citations omitted).

***No evidence of supervisory relationship between CCA and Bustamante***

As a threshold matter, the Court finds that Plaintiffs have not established that CCA can be held liable for Bustamante's conduct. Bustamante, a member of the NMWCF medical staff employed by CMS, was plainly not a CCA employee, and Plaintiffs do not assert that he was an agent of the company, either. It is well-established that § 1983 imposes liability on an entity "that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." *Monell*, 436 U.S. 658 at 692 (emphasis added); *see also Dubbs*, 336 F.3d at 1215 ("a municipality cannot be held liable under 42 U.S.C. § 1983 merely on account of the

unauthorized acts of its agents") (emphasis added). While Plaintiffs have set forth evidence that CMS employees received training from CCA, they do show (or even attempt to argue) that Bustamante was acting as an agent for CCA at the time of the alleged misconduct. In the absence of any evidence to support Plaintiffs' claim that § 1983 liability should apply to CCA here, the Court finds that CCA is entitled to summary judgment on this claim.

## II. Plaintiffs' § 1983 Supervisory Liability Claim Against Ulibarri

Plaintiffs also assert a §1983 supervisory liability claim against CCA Defendant Ulibarri on the theory that "Ulibarri, as Chief of Security, was a policy maker and supervisor of all other [corrections officers] named as Defendants in the instant case" (Doc. 1 Ex. A, Cplt. ¶ 128).[3] Plaintiffs claim that prior to Bustamante's sexual assaults of the Plaintiffs, "Ulibarri knew of multiple incidents of illicit sexual contact between NMWCF employees and inmates . . . and knew illicit sexual contact between NMWCF employees and contractors and inmates was contrary to both the welfare of female inmates and to the proper administration of a detention facility," *id.* ¶ 131; that Ulibarri "knew that [ ] Bustamante had a history of sexual improprieties and/or misconduct at the facility," *id.* ¶ 132; and that despite this knowledge, Ulibarri failed "to protect NMWCF inmates from sexual predation by NMWCF employees or contractors" and in fact "created a climate of institutional tolerance of sexual misconduct at NMWCF and fear among victims of sexual assaults that any reporting of such misconduct by prison personnel would be met with retaliation." *Id*. ¶¶ 133-34.

---

[3]Disciplinary officer Linda Hernandez is the only remaining individual CCA Defendant over whom Ulibarri would presumably have had authority, as Arlene Hickson was a Warden at NMWCF, and the Complaint makes clear that Ms. Hickson's predecessor as Warden, Allen Cooper, "was a . . . supervisor of Defendant Ulibarri." (Doc. 1 Ex. A, Cplt. ¶ 127). All other CCA Defendants named in the Complaint have been dismissed from this suit.

The CCA Defendants contend that Ulibarri is entitled to summary judgment on the instant claim because there is no evidence that he knew Bustamante was engaged in sexual misconduct, and further, because he was not aware of any past problems at NMWCF involving inappropriate sexual contact between inmates and CMS employees. The CCA Defendants further note that Bustamante was neither CCA's employee nor its agent.

***No evidence of supervisory relationship between Ulibarri and Bustamante***

A plaintiff may not maintain a §1983 individual-capacity action against a defendant official that is grounded in the concept of strict supervisor liability. *Brocks v. Bd. of Cty. Comm'rs of Sedgwick Cty., Kansas*, 329 Fed. Appx. 200, 202 (10th Cir. 2009) ("In an individual capacity suit [under] §1983 . . . the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation.") (internal quotation omitted); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("[i]n a 1983 suit . . . the term 'supervisory liability' is a misnomer"). Thus, in order for a plaintiff to establish that a supervisor is liable under §1983 for the unconstitutional acts of her subordinates, the "plaintiff must first show the supervisor's subordinates violated the constitution," then "must show an affirmative link between the supervisor and the violation, namely the active participation or acquiescence of the supervisor" in the violation. *Starks v. Lewis*, 313 Fed. Appx. 163, 167 (10th Cir. 2009). "Because mere negligence is not enough to hold a supervisor liable under §1983," the Tenth Circuit has held that the "plaintiff must establish that the supervisor acted knowingly or with deliberate indifference that a constitutional violation would occur." *Id.* Moreover, because the deliberate indifference standard in a prison-conditions case is a subjective requirement, a "prison official is liable only if the official *knows of* and *disregards* an excessive risk to inmate health and safety. It is not enough to establish that the official should have known

of the risk of harm." *Gonzales v. Martinez,* 403 F.3d 1179, 1186 (10th Cir. 2005) (emphasis added).

Just as they failed to explain how CCA could be liable for the conduct of a non-CCA employee or agent, Plaintiffs fail to show how the concept of supervisor liability applies to Ulibarri, a CCA employee. It is undisputed that Ulibarri was a CCA security employee and Bustamante a Licensed Practical Nurse employed by CMS. Under §1983, an official my be "liable for the misconduct of [his] <u>subordinates</u>." *Serna v. Colo. Dept. Of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (emphasis added). *See also id.* ("To establish supervisor liability under §1983, it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation.") (emphasis added). Because Plaintiffs fail to even clear the first hurdle by showing that Ulibarri acted as a supervisor to Bustamante, the Court finds that Ulibarri is entitled to summary judgment on Plaintiffs' supervisory liability claim.

**III. Plaintiffs' First Amendment Retaliation Claims Against Ulibarri, Hickson, and Hernandez**

Plaintiffs claim that the individual CCA Defendants each unlawfully retaliated against the Plaintiffs for the constitutionally-protected acts of reporting Bustamante's sexual assault and pursuing the instant suit. Specifically, Plaintiffs contend that (1) Ulibarri, Hickson, and Hernandez collectively retaliated against Lisa Jaramillo by placing her in segregation for over 90 days; (2) Ulibarri alone retaliated against Kimberly Chavez by placing her in segregation for receiving a hug from another inmate; and (3) Ulibarri and Hernandez retaliated against Ann Chavez by firing her from her job and physically assaulting her in the act of removing her employee nametag.

To establish a First Amendment retaliation claim in a §1983 action, "a plaintiff must

show that (1) he was engaged in constitutionally protected activity, (2) the [defendant's] actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the [defendant's] actions were substantially motivated as a response to his constitutionally protected conduct." *Nielander v. Bd. of Cnty. Comm'rs,* 582 F.3d 1155, 1165 (10th Cir. 2009) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

Here, there is no question that Plaintiffs' reporting the acts of sexual misconduct and pursuit of the instant case were constitutionally-protected activities. "It is well established that prison officials may not unreasonably hamper inmates in gaining access to the courts." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) citing *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (retaliation for inmate's filing administrative grievances and lawsuits was violation of, *inter alia,* inmate's First Amendment rights). Further, the Court finds that Plaintiffs have set forth sufficient evidence of injury, in the form of their segregation and/or firing.

The question, then, is whether Plaintiffs have set forth sufficient evidence that the CCA Defendants' actions were substantially motivated in response to Plaintiff's protected conduct. The Tenth Circuit has held that an act taken "in retaliation for the exercise of a constitutionally protected right is actionable under [§]1983 even if the act, when taken for a different reason, would have been proper." *Smith*, 899 F.2d at 948. The plaintiff, however, "must produce evidence of improper motive, rather than relying upon allegations, to defeat a summary judgment motion." *Id.* at 948, n.4, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). The court may look to circumstantial evidence, including "evidence of the suspicious timing of [the plaintiff's] discipline" or "an alleged pattern by defendants of blocking [her] access to legal materials and assistance," *Smith*, 899 F.2d at 949, in determining whether a plaintiff's evidence supports an inference by a reasonable jury that defendants took disciplinary

action against her based at least in part on a retaliatory motive.

The Court will consider the proffered evidence of the CCA Defendants' retaliatory motives with respect to each of the Plaintiffs in turn.

***Lisa Jaramillo's Retaliation Claim***

Plaintiffs attribute two different retaliatory motives to the CCA Defendants with regard to their treatment of Lisa Jaramillo. First, they claim that by October 2008, when Jaramillo was segregated from the rest of the inmate population, her pursuit of this case was known to Hickson, Ulibarri, and Hernandez. Second, they claim that Hickson, Ulibarri, and Hernandez also retaliated against Jaramillo for reporting Kimberly Chavez' confidence that she was sexually assaulted by CO Andrew Trujillo.

With respect to the first part of their claim, the Court finds that Plaintiffs fail to provide evidence sufficient to support an inference that Jaramillo's segregation was related to her complaint against Bustamante. Jaramillo's complaint of sexual assault was known to the CCA Defendants since at least January 24, 2008 – nine months before Jaramillo was placed in segregation. Thus, there was no temporal proximity between Jaramillo's protected activity and the individual CCA Defendants' disciplinary action against her. In fact, CCA Defendant Hickson was not even Warden at the time that Jaramillo's allegations against Bustamante became known around the facility. In the absence of any other circumstantial evidence of retaliation, the Court finds that Defendants are entitled to summary judgment on this part of Jaramillo's retaliation claim.

With respect to Plaintiffs' claim that the individual CCA Defendants retaliated against her because she reported Kimberly Chavez' private disclosure that she had been sexually assaulted by CO Trujillo, the evidence shows that Jaramillo shared Chavez' confidence with

prison staff on October 22, 2008, and that Chavez refused to either confirm or deny Jaramillo's report. Ulibarri immediately initiated a misconduct report against Jaramillo for fabricating an allegation, and placed her in segregation pending resolution of the investigation into whether she had made a false claim. Warden Hickson, however, testified that prison policy dictated that an inmate could only be placed in segregation pending an investigation if the investigation was into a "serious criminal offense," and offered her opinion that the allegations against Jaramillo did not constitute a "serious criminal offense." (Doc. 196 Ex. W, Hickson Dep. at 75:21-76:8; 56:23-57:16).

After a hearing, Hernandez determined that Jaramillo had committed the offenses of fraud and false statement, a finding that called for the conclusion that Jaramillo "present[ed] or use[ed] anything which one knows to be false with intent to deceive." (Doc. 194 at 21). Jaramillo was given a sentence of an additional 60 days' punitive segregation and 60 days' loss of good time. Hernandez admitted at her deposition that she did not know who Jaramillo actually intended to deceive within the meaning of the applicable offense; she further testified that her determination was based on Kimberly Chavez' refusal to comment either way on Jaramillo's allegation. (Doc. 196 Ex. X, Hernandez Dep. at 84:9-84:10; 46:9-47:2).

Jaramillo appealed the disciplinary decision to CCA Defendant Hickson, who had by this time succeeded Allen Cooper as Warden at NMWCF. (Doc. 176 Ex.1, Hickson Dep. at ¶ 2) According to Jaramillo's deposition testimony, which the Court accepts as true for purposes of this motion, Hickson ordered a meeting with Jaramillo, during which she refused to listen to her and accused her of lying and trying to ruin Trujillo's marriage and his life. Hickson then denied Jaramillio's appeal. Jaramillo's good time was eventually restored after Trujillo was terminated for perpetrating sexual assaults on inmates including Kimberly Chavez, though she had already

completed her segregation by this time.

The Court finds that questions of fact exist to preclude summary judgment on this point. Thus, Ulibarri's, Hernandez', and Hickson's motion for summary judgment on Jaramillo's retaliation claim is denied as it pertains to Jaramillo's report of CO Trujillo's sexual misconduct.

***Kimberly Chavez' Retaliation Claim***

The only CCA Defendant implicated in Kimberly Chavez' retaliation claim is Ulibarri, who Chavez claims placed her in segregation "in February or March of 2009" for "receiving a hug from another inmate." (Doc. 1 Ex. A, Cplt. ¶¶ 113, 148). According to Plaintiffs, the segregation was not motivated by "any security threat or other legitimate penological interest, but rather by [Ulibarri's] desire to retaliate against [Chavez] for being a victim of Defendant Bustamante." *Id.* at ¶ 114. Plaintiffs do not argue that Chavez' conduct should not have led to the imposition of a segregation order; rather, they assert that her conduct "widely occurs at NMWCF" and that other inmates have not received punishment for it. *Id.* at ¶ 113. However, Plaintiffs fail to offer any evidence of similar conduct not resulting in segregation or other sanction. The timing of the segregation does not support an inference of retaliation because it came over a year after Chavez first claimed that Bustamante sexually assaulted her. Moreover, Plaintiffs do not offer any other circumstantial evidence tending to raise an inference that Ulibarri took action against Chavez based at least in part on retaliatory motives. The Court thus finds that Ulibarri is entitled to summary judgment on Chavez' retaliation claim. *See Smith*, 899 F.2d at 948 ("A plaintiff must produce evidence of improper motive, rather than relying upon allegations, to defeat a summary judgment motion").

***Ann Chavez' Retaliation Claim***

Finally, Plaintiffs contend that on February 20, 2008, one month after Bustamante's

suspension, Ulibarri confronted Ann Chavez about Hernandez' observation of her failure to follow directions in her maintenance position. During the conversation, Plaintiffs contend that Ulibarri lost his temper and fired Chavez on the spot, forcibly ripping off her employee nametag and bruising her shoulder in the process. The existence of a legitimate reason for Chavez' firing would not be sufficient to enter summary judgment, if Plaintiffs had proferred evidence that the firing was in retaliation for Chavez' protected conduct. *Smith,* 899 F.2d at 948. Plaintiffs do not, however, offer any evidence that the allegations she made against Bustamante the month before – rather than her failure to follow directions at work – figured into the decision to fire her. Moreover, Plaintiffs fail to put forth evidence of improper motive on Hernandez' part. In the absence of any circumstantial evidence that could lead a reasonable jury to conclude that Ulibarri and Hernandez retaliated against Chavez in violation of § 1983, the Court finds that Ulibarri and Hernandez are entitled to summary judgment on Ann Chavez' retaliation claim.

**IV. Plaintiffs' Negligence Claims Against Hickson and Ulibarri**[4]

In order to prevail on a state-law claim for negligence, Plaintiffs must establish the common-law elements of a negligence suit: duty, breach, loss or damage, and causation. *Alberts v. Schultz,* 126 N.M. 807, 813 (N.M. 1999). While no one disputes that the CCA Defendants had a duty of reasonable care to safeguard inmates' health and safety, Plaintiffs claim that CCA Defendant Ulibarri failed to exercise that duty by "failing to institute and enforce physical, procedural, and regulatory safeguards to protect female inmates from sexual assault, despite [his]

---

[4]Plaintiffs' negligence claims are brought under the New Mexico Tort Claims Act, §§ 41-4-6 and 41-4-9

knowledge set forth above."[5] (Doc. 1 Ex. A, Cplt. ¶ 170). Plaintiffs further contend that both Hickson and Ulibarri "failed to exercise reasonable care by failing to institute and/or enforce procedures preventing sexual assaults, batteries, and rapes, retaliation and/or false imprisonment, and by actually retaliating against Plaintiffs as a result of their sexual victimization."[6] *Id.* at ¶171.

The only evidence Plaintiffs' proffer in support of Warden Hickson's negligence relates to Hickson's denial of Lisa Jaramillo's appeal from the finding of Fraud and False Statement. While the Court has found this evidence sufficient to withstand summary judgment on Plaintiffs' retaliation claim, Plaintiffs fail to present evidence that Hickson breached a duty to "institute and/or enforce procedures" that would have protected them from sexual assault. Indeed, Plaintiffs fail to acknowledge that Hickson was not even elevated to the position of Warden until June 2008, (*see* Doc. 176 Ex.1, Hickson Dep. at ¶ 2), more than six months after the assaults occurred. The record contains no indication of what Hickson's role was at NMWCF prior to that promotion, and thus, no suggestion that she was situated to "institute or enforce" procedures that would have protected Plaintiffs from Bustamante's sexual misconduct during the period that the assaults occurred. Because Plaintiffs cannot avoid summary judgment by setting forth general allegations unsupported by specific evidence, the Court finds that Hickson is entitled to summary judgment on Plaintiffs' negligence claim.

Similarly, Plaintiffs have not set forth evidence that Ulibarri breached his duty of care

---

[5]It is unclear whether Plaintiffs are claiming that Hickson and Ulibarri had "knowledge" of actual misconduct by Bustamante or constructive notice that the inmates at NMWCF faced a substantial risk of sexual assault.

[6]Plaintiffs' retaliation claims are addressed, *supra*, and the Court rejects Plaintiffs' suggestion that they be addressed again under this separate count.

by not instituting safeguards and procedures to protect them from sexual assault. Plaintiffs do not show how Ulibarri – who worked under Warden Cooper and then Warden Hickson – was in a position to institute "physical, procedural, and regulatory safeguards" and "procedures preventing sexual assaults" at the prison.

However, with respect to Plaintiffs' further contention that Ulibarri failed to enforce *existing* procedures and safeguards that would have protected them from Bustamante's assaults, the Court finds that Plaintiffs have raised a genuine issue of material fact. Although Plaintiffs fail to address this part of their claim in the pertinent section of their opposition brief,[7] Plaintiffs appear to have this claim in mind in setting forth their Statement of Material Facts, which states that Ulibarri "fail[ed] to secure the medical unit at NMWCF" and improperly delegated security duties to CMS employees. (Doc. 194 at 6-7). Plaintiffs point to Ulibarri's deposition testimony that it was the responsibility of security staff to "make sure that there [were] officers in the units," (Doc. 196 Ex. F, Ulibarri Dep. at 10:16-10:17) and that "my responsibility is to make sure I have enough [CCA] staff to maintain the security of that facility, for the safety of our inmates. . . . Everybody has a role, and if they don't take care of their role, it doesn't work. My role is the security of the facility at that point." *Id.* at 137:15-137:20. In light of Plaintiffs Jaramillo's and Kimberly Chavez' testimonial evidence that they were working alone with Bustamante at the time of their assaults, the Court finds that a reasonable jury could conclude

[7]Plaintiffs are reminded that it is incumbent on them to set forth the basis for each of their challenged claims, rather than casually cross-reference arguments as they have repeatedly done in this case. *See, e.g., Plaintiffs' Response in Opposition to the CCA Defendants' Motion for Summary Judgment*, Doc. 194 at 35: "the wealth of evidence described above raises genuine issues of material fact regarding whether Defendants CCA, Ulibarri, and Hickson, and Mr. Cooper [sic], breached their respective duties of reasonable care by undertaking the acts and omissions discussed in Parts I - III of this brief."

from the proffered evidence that Ulibarri breached a duty of care to Plaintiffs by allowing them to be alone in the presence of Bustamante without a CCA security officer present. Thus, the CCA Defendants' motion for summary judgment on Plaintiffs' negligence claim against Ulibarri is denied.

**V. Plaintiffs' Negligence Claim Against CCA**

Plaintiffs charge CCA with negligence under two different theories of liability. First, Plaintiffs claim that CCA is "vicariously liable for Defendant Bustamante's conduct, which [he] committed in the course and scope of his duties as an independent contractor employed by CCA and NMCD." (Doc. 1 Ex. 1, Cplt. ¶ 157). As discussed above in reference to their §1983 claims, Plaintiffs have offered no evidence that CMS employee Bustamante was an employee agent of CMS. Moreover, Plaintiffs offer no evidence or argument that Bustamante was acting in the course and scope of his duties when he allegedly assaulted them. A party may not "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." *West*, 2010 U.S. Dist. LEXIS 131626, at *42. Thus, the Court finds no evidence that vicarious liability for Bustamante's conduct attaches to CCA here.

Alternatively, however, Plaintiffs claim that CCA breached its own duty of care to Plaintiffs by "failing to institute and enforce physical, procedural, and regulatory safeguards to protect female inmates from sexual assault" and "failing to institute and/or enforce procedures preventing sexual assaults." (Doc. 1 Ex. 1, Cplt. ¶¶ 170-171). Once again, Plaintiffs do not specifically show how CCA breached its duty of care in their response brief; rather, they indicate that the "acts and omissions discussed" under their other claims suffice to show that CCA's duty of care was breached. (Doc. 194 at 5). Thus, it appears that Plaintiffs mean to contend that CCA breached its duty of care by "systematically retaliat[ing] against NMWCF

inmates who reported . . . allegations of sexual misconduct"; "fail[ing] to ensure all inmates who entered the medical unit were accompanied by a corrections officer"; "promot[ing] a backwards policy of keeping corrections officers 'as far away as possible' from medical examinations between male caregivers and female inmates in the medical unit"; "allow[ing] Defendant Bustamante to work the medical unit for months without receiving his 40-hour CCA security training; and "fail[ing] to take the action required by NMCD and CCA policies in response to a report that Bustamante was breaching security by bringing contraband into the facility." (Doc. 194 at 28).

The Court finds that there are material facts in dispute regarding whether CCA breached its duty of care to keep Plaintiffs safe within the NMWCF medical unit. The evidence shows that Plaintiffs Jaramillo and Kimberly Chavez were permitted to work the weekends during which they were allegedly sexually assaulted without a CCA security officer present — though Warden Cooper testified that "there were no inmates allowed in that area at that time." (Doc. 196 Ex. D, Cooper Dep. at 99:12-99:16; 100:13). Plaintiffs further point to evidence of CCA's practice of keeping corrections officers "as far away as possible" from inmate's medical examinations, *id.* at 101:21, as proof of its negligence, in light of Plaintiff Ann Chavez' allegation that she was sexually assaulted by Bustamante during such an unattended examination.

Plaintiffs have not offered evidence that it was CCA's responsibility to ensure that Bustamante was trained before commencing his duties and have not shown that CCA's failure to timely train Bustamante resulted in Plaintiffs' injuries. Plaintiffs have, however, proffered evidence that CCA was negligent in allowing Bustamante onsite before it had determined that he was trained in CCA security procedures – namely, Cooper's testimony that new employees would not be issued an identification card by CCA to enter the facility until their 40-hour CCA

training was complete. Thus, the Court denies summary judgment as to Plaintiffs' negligence claim against CCA. *See Lessard v. Coronado Paint & Decorating Center, Inc.*, 142 N.M. 583, 593 (N.M. Ct. App. 2007) ("Determining the existence of a duty is a question of law for the court, whereas breach of duty and proximate cause are questions of fact for the jury.").

**CONCLUSION**

For the foregoing reasons, it is therefore ordered that the CCA Defendants' *Motion for Summary Judgment* (Doc. 176 Ex.1) is granted in part and denied in part as follows:

1. As to Plaintiffs' claim for § 1983 supervisory liability against CCA, the CCA Defendants' motion is GRANTED.

2. As to Plaintiffs' claim for § 1983 supervisory liability against Ulibarri, the CCA Defendants' motion is GRANTED.

3. As to Lisa Jaramillo's claims for retaliation against Ulibarri, Hickson, and Hernandez, the CCA Defendants' motion is DENIED.

4. As to Kimberly Chavez' claim for retaliation against Ulibarri, the CCA Defendants' motion is GRANTED.

5. As to Ann Chavez' claim for retaliation against Ulibarri and Hernandez, the CCA Defendants' motion is GRANTED.

6. As to Plaintiffs' claim for negligence against Hickson, the CCA Defendants' motion is GRANTED.

7. As to Plaintiffs' claim for negligence against Ulibarri, the CCA Defendants' motion is DENIED.

8. As to Plaintiffs' claim for negligence against CCA, the CCA Defendants' motion is DENIED.

.

**UNITED STATES DISTRICT JUDGE**