IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LISA JARAMILLO and KIM CHAVEZ,

        Plaintiffs,

vs.                                                    CIV No. 09-634 JCH/WDS

ARLENE HICKSON, ROBERT
ULIBARRI, LINDA HERNANDEZ,
and CORRECTIONS CORPORATION
OF AMERICA,

        Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' **(1)** *Motion in Limine No. 1 to Admit Evidence of Plaintiffs' Counsel's Advancement of Settlement Proceeds or Loans to Plaintiffs* (Doc. 307); **(2)** *Motion in Limine No. 2 to Preclude Any Argument, Evidence or Testimony Relating to the Sufficiency of the Investigation Into Mr. Bustamante's Alleged Conduct* (Doc. 308); **(3)** *Motion in Limine No. 3 to Preclude Any Argument, Evidence or Testimony Relating to Other Settled Lawsuits or Claims Made by Non-Party Inmates, Including Claims Made By Dismissed Party Mary Lou Collins* (Doc. 309); **(4)** *Motion in Limine No. 4 to Preclude Any Argument, Evidence or Testimony Relating to a 2003 National Institute of Corrections Report* (Doc. 311); **(5)** *Motion in Limine No. 5 to Preclude Any Argument, Evidence, or Testimony Relating to Segregation Placement Sheets, or Any Other Disciplinary or Institutional File Documents of Non-Party Inmates* (Doc. 312); and **(6)** *Motion in Limine No. 6 to Preclude Any Argument, Evidence or Testimony Relating to Ann Chavez' Claims or Settlement* (Doc. 313); as well as Plaintiffs' **(7)** *Opposed Motion in Limine to Exclude Any and All Evidence Related to Lisa Jaramillo's Refusal to Submit to Polygraph Testing* (Doc. 310).  Having considered the

motions, briefs and exhibits, and being otherwise fully informed, the Court rules as set forth below.

**I.      Defendants' Motion in Limine No. 1 to Admit Evidence of Plaintiffs' Counsel's Advancement of Settlement Proceeds or Loans to Plaintiffs**

Defendants' first motion seeks an order admitting "evidence of multiple separate loans or advances made by Plaintiffs' counsel to his clients, reportedly payable upon recovery of settlement proceeds or judgment satisfaction." (Doc. 307 at 1). Specifically, Defendants seek to introduce evidence that Plaintiffs' attorney Mark Fine provided Lisa Jaramillo with $500, Kim Chavez with $220, and former Plaintiff Ann Chavez with $400 over the Summer of 2009. Defendants argue that such evidence is highly relevant to Plaintiffs' motives and "bias toward . . . lying." *Id.* at 2. While Defendants concede that the aforementioned payments were made after the Complaint in this case was filed, they nevertheless contend that they are suggestive of Plaintiffs' altering their stories on the promise of obtaining greater financial rewards. They note that (1) Ann Chavez, when initially interviewed by an investigator employed by the NM Corrections Department (then a party opponent), refused to speak with the investigator and referred him to her counsel, Mr. Fine; (2) that Kim Chavez initially told the NMCD investigator that she had not been molested by Roger Bustamante, but later "changed her story," *id.* at 3; and (3) that Lisa Jaramillo confided in a recorded telephone call that she could tolerate her placement in segregation by the individual Defendants because her attorney allegedly informed her that it would strengthen her retaliation claim, which supports Defendants' theory that Fine engaged in "manipulation and gamesmanship" in order to help his client buttress her theory of retaliation. *Id.* at 4. While Defendants fail to make explicit the supposed connection between these three incidents and the payments to Plaintiffs, the implication is that all of these events combine to

vaguely suggest that Plaintiffs' factual allegations were affected by the payments.

The Court agrees with Plaintiffs that Defendants' motion should be denied. Defendants have not shown how evidence of Fine's financial assistance to Plaintiffs is relevant to the resolution of Plaintiffs' two remaining claims (for negligence and retaliation), let alone how Kim Chavez' and Ann Chavez' acceptance of payments from their counsel in mid-2009 is retroactive evidence of a conspiracy between Plaintiffs and their counsel dating back to their initial failure to provide a complete account of their claims in 2008. Further, the Court agrees with Plaintiffs that there is no evidence that the payment to Jaramillo supports the version of events described in Defendants' motion. Thus, because Defendants have failed to show that this concededly prejudicial evidence is outweighed by its probative value, the Court finds that evidence of these payments is inadmissible.

**II.     Defendants' Motion in Limine No. 2 to Preclude Any Argument, Evidence or Testimony Relating to the Sufficiency of the Investigation Into Mr. Bustamante's Alleged Conduct**

Next, Defendants seek to exclude at trial (1) any evidence regarding the sufficiency of the investigation into Plaintiffs' allegations against Bustamante; (2) any evidence tending to give rise to the argument that CCA erred by not referring Plaintiffs' allegations to outside law enforcement. Defendants argue that "steps taken after-the-fact cannot support liability" for Defendants CCA's and Robert Ulibarri's alleged negligence in failing to keep Plaintiffs safe from sexual abuse. (Doc. 308 at 3). Defendants further contend, inter alia, that Plaintiffs cannot show that CCA had a duty to conduct an investigation into the assaults in addition to the investigation already conducted by NMCD (the entity that contracted with Bustamante's employer, CMS); that such evidence would be inadmissible as prejudicial under F.R.E. 403; and that allowing the evidence would be "improper where Plaintiffs bear responsibility for their lack

of participation in the NMCD investigation." *Id.* at 4.

Plaintiffs respond that Defendants' characterization of the evidence of the insufficiency of CCA's investigations into complaints about Bustamante as "after-the-fact" is disingenuous, as it includes evidence that the Director of the CMS medical unit reported security concerns involving Bustamante (namely, inmates' allegations that he was smuggling contraband into the prison and "hanging around" with Lisa Jaramillo) to CCA as early as 2007, months in advance of Plaintiffs' alleged sexual abuse; that security concerns at NMWCF were clearly the domain of CCA; that CCA's own witnesses testified that the 2007 allegations should have resulted in a thorough investigation; and that, even if CCA did not have supervisory authority over Bustamante, and thus was not empowered to fire him, it did have the authority to bar him from the facility, which could have prevented Plaintiffs' injuries. Moreover, Plaintiffs appear to suggest that even "after-the-fact" evidence is relevant, because CCA's failure to call law enforcement after it "barred a staff member from its facility for misconduct and the NMDC's investigation into the allegations was in part substantiated" demonstrates negligence. *Id.* at 7.

The Court agrees with Defendants that evidence or argument relating to steps CCA allegedly failed to take *after* Plaintiffs' alleged injuries occurred – including evidence that CCA failed to report the alleged sexual assaults to law enforcement – cannot be used to support Plaintiffs' theory that CCA's negligence was the proximate cause of those injuries. However, the Court also notes that the described evidence relating to CCA's failure to follow up on the 2007 report that Bustamante appeared to be overly familiar with Lisa Jaramillo could be relevant to the jury's consideration of whether CCA was negligent in allowing inmates to be alone with medical staff. In the absence of a full account from the parties of what constitutes all of the evidence of CCA's purported failure to investigate security issues surrounding Bustamante, the

Court will reserve ruling on the instant motion. Thus, the parties must alert the Court prior to introducing any testimonial or extrinsic evidence at trial relating to the sufficiency of CCA's investigation into reports regarding Bustamante, at which time the Court will make a ruling depending on the proffered evidence. Moreover, the parties are hereby instructed not to mention this evidence during voir dire or opening statements.

**III.    Defendants' Motion in Limine No. 3 to Preclude Any Argument, Evidence or Testimony Relating to Other Settled Lawsuits or Claims Made by Non-Party Inmates, Including Claims Made By Dismissed Party Mary Lou Collins**

Third, Defendants move to preclude the introduction at trial of any "evidence relating to other lawsuits, settlements, or claims made by other inmates, including dismissed party Mary Lou Collins." (Doc. 309 at 1). Defendants contend that evidence of other lawsuits filed against Defendants is irrelevant, prejudicial, impermissible "bad act" evidence under F.R.E. 404(b), and would distract from the issues in this case.

Further, Defendants claim that any allegations of misconduct made about CCA employees, "whether pre- or post-incident, are irrelevant to proving alleged negligent supervision of non-employee Bustamante." *Id*. at 2-3. A footnote in Defendants' brief suggests that this statement refers to the report passed on by Lisa Jaramillo to CCA employees (that Kim Chavez had confided to Jaramillo that she was sexually assaulted by Corrections Officer/CCA employee Andrew Trujillo), which staff did not believe, and which ultimately led to Jaramillo's being punished first with administrative segregation and then with disciplinary segregation. It is unclear how Defendants' argument fits within the framework of the instant motion in limine, as the claim reported by Jaramillo did, in fact, originate with Jaramillo's Co-Plaintiff, Kim Chavez,

and not a "non-party inmate."[1]

Finally, with respect to former Plaintiff Mary Lou Collins, Defendants note that her claims were dismissed for failure to prosecute when she failed on three different occasions to appear at a scheduled deposition or otherwise participate in this case. Should Plaintiffs be able to secure Collins' presence as a witness at trial, Defendants argue, her testimony should be precluded "as fundamentally unfair," as it would require them to cross-examine her without the benefit of a prior deposition.

Plaintiffs respond that (1) they will not seek to introduce evidence of claims or lawsuits brought against CCA or its employees by non-parties, but will rely on non-party witnesses to testify to their personal experiences and observations; (2) that they will only seek to introduce evidence of CCA employee Trujillo's sexual abuse of Kim Chavez and another inmate on rebuttal, if Defendants open the door by attacking the credibility of Lisa Jaramillo's report of the incident; (3) they "will not be calling Ms. Collins." (Doc. 342 at 2).

The Court agrees that lawsuits and claims against any of the Defendants made by non-

---

[1] Defendants incorrectly suggest throughout their motions in limine that the remaining negligence claim in this case involves CCA's "negligent supervision of non-employee Bustamante." (Doc. 309 at 1). On the contrary, the Court granted summary judgment on the § 1983 supervisory liability claim against CCA, as there was no evidence of an agency relationship between it and Bustamante. (Doc. 255). Rather, the Court held that Plaintiffs assert a triable claim that CCA employee Robert Ulibarri was negligent by failing "to enforce *existing* procedures and safeguards that would have protected them from Bustamante's assaults," *id.* at 14, as well as a triable claim that "CCA breached its duty of care to keep Plaintiffs safe within the NMWCF medical unit," by not ensuring a security officer was present while inmates worked with or were attended to by medical staff, as well as by "allowing Bustamante onsite before [CCA] had determined that he was trained in CCA security procedures" by the entity that actually had supervisory authority over him, CMS. *Id.* at 16.

party inmates are irrelevant to the determination of Plaintiffs' own claims.[2]  Thus, Defendants motion will be granted as it relates to such evidence, including any evidence involving Mary Lou Collins' former claims.  However, the Court agrees with Plaintiffs that if Defendants attack Lisa Jaramillo's credibility in relaying Kim Chavez' report of misconduct by Trujillo, they will have opened the door to introduction of evidence regarding the underlying claim.  Thus, both parties must alert the Court prior to introducing any testimonial or extrinsic evidence at trial relating to the complaints about Trujillo, at which time the Court will make a ruling depending on the proffered context.

**IV.     Defendants' Motion in Limine No. 4 to Preclude Any Argument, Evidence or Testimony Relating to a 2003 National Institute of Corrections Report**

Next, Defendants move to exclude from trial (1) a 2003 National Institute of Corrections Report of an On-Site Visit to the NM Corrections Department ("the NIC Report") and (2) any testimony from Plaintiffs' expert, Manuel Romero, related to the NIC Report.  Defendants contend that the NIC Report, which contains the findings of unsworn declarants, is inadmissible as hearsay that would be offered as proof regarding the training, policies, and procedures that existed at NMWCF in 2003; that it is irrelevant for being remote in time, and prepared under a different Warden than Warden Cooper, who occupied the role during the events in issue; that it relates to dismissed claims; and that it would likely confuse, mislead, and prejudice the jury.

Plaintiffs respond that the NIC Report falls within the "public records" exception to the hearsay rule under F.R.E. 803(8), as the NIC is a public agency operating under the Department of Justice.  Plaintiffs further seek to preempt any objections to the untimeliness of the Report by

---

[2] The Court's ruling does not apply to any testimonial or extrinsic evidence relating to former Plaintiff Ann Chavez.  Defendants have separately moved to preclude evidence relating to Ms. Chavez.  The Court takes up that motion, *infra.*

noting that it is "evidence that CCA failed to implement Report recommendations despite being on notice that their failure to do so may increase instances of sexual assault at NMWCF." (Doc. 339 at 2). Specifically, Plaintiffs point to portions of the Report that suggested that CCA utilize specialized training for staffers working with female inmates and "a more positive approach" to training regarding undue familiarity, neither of which suggestion was taken; and that the Report similarly notes NMWCF's frequent violation of its then-extant policy to rotate inmate work assignments every 60 days. In addition, Plaintiffs note that the NIC Report describes how medical staff at the prison in 2003 were "unaware of what exactly to report and there could be 'some significant scenarios that are not reported due to unclear definitions and policies'" – a condition that Plaintiffs presumably seek to show did not change through the relevant time period. *Id.* at 3.

   The Court concludes that the 2003 NIC Report is simply too remote in time to be relevant to the determination of whether, more than four years later, CCA and Ulibarri were negligent in failing to enforce policies and procedures respecting inmate safety as they existed at that time. Accordingly, Defendants' motion will be granted.

**V   Defendants' Motion in Limine No. 5 to Preclude Any Argument, Evidence, or Testimony Relating to Segregation Placement Sheets, or Any Other Disciplinary or Institutional File Documents of Non-Party Inmates**

   Further, Defendants move to preclude Plaintiffs from entering into evidence "Segregation Placement Sheets" setting forth how other non-party inmates were, like Lisa Jaramillo, placed into segregation by CCA employees at NMWCF as a punishment for various infractions, presumably including the making of false reports of misconduct against prison employees; they similarly "move to exclude any disciplinary or institutional file documents related to any non-party inmates." (Doc. 312 at 1). Defendants argue that the documents are

inadmissible hearsay offered for the purpose of showing that the segregated inmates were placed in segregation as retaliation for reporting misconduct.  They contend that introduction of these documents "would require trials within this trial," in which the jury would be asked to determine, *inter alia,* whether the reports made by the segregated inmates were truthful, "and whether they were placed in segregation for reporting the same within a time frame sufficient to show a causal link."  *Id.* at 3.  Defendants further note, *inter alia,* that the only retaliation claim that remains in this case lies against individual Defendants Ulibarri, Hickson, and Hernandez, making  segregation determinations by other CCA employees irrelevant, and that many of the offered documents relate to a different time period, and/or were not for reports of sexual misconduct by prison staff.

Plaintiffs' cursory response to the instant motion argues that the evidence at issue is an "essential component" of their claims, because it shows that "Defendants engaged in a practice of placing inmates in segregation immediately after they reported sexual or other misconduct by staff." (Doc. 341 at 1).  Plaintiffs further suggest in conclusory fashion that, *inter alia,* the records in issue meet two exceptions to the hearsay rule ( as "records of regularly conducted activity" and "public records and reports"), and that Plaintiffs  need not have a triable supervisory-liability retaliation claim against CCA in order to introduce evidence that unidentified CCA agents – presumably including Ulibarri, Hickson, and Hernandez -- "participated in a practice spanning years."  *Id.* at 2.  Plaintiffs do not address the issue of whether putting the documents into evidence would require the jury to determine whether the allegations made by the segregated inmates were, in fact, truthful.

The Court is unpersuaded by Plaintiffs' arguments.  Introduction of evidence that inmates <u>other than</u> Lisa Jaramillo were segregated on the orders of officials <u>other than</u> the instant

Defendants, where there may be little similarity in the factual allegations underlying the allegedly retaliatory decision to impose segregation, is irrelevant to resolution of Jaramillo's retaliation claim.  The admission of such evidence raises the specter of multiple trials within a trial and carries significant potential to create jury confusion.  Accordingly, Plaintiffs will be precluded from offering evidence related to the segregation of non-party inmates at trial.

## VI.  Defendants' Motion in Limine No. 6 to Preclude Any Argument, Evidence or Testimony Relating to Ann Chavez' Claims or Settlement

Finally, Defendants move to preclude Plaintiffs from introducing any evidence relating to the factual allegations underlying the former claims of Ann Chavez, with whom Defendants have reached a settlement.  Defendants also move to preclude the introduction of any evidence relating to the fact that Ms. Chavez settled her claims.  Defendants argue that Chavez' claims were last in time, are irrelevant because they are factually distinct from the remaining Plaintiffs' claims in certain respects (while they too involved sexual assault by Bustamante, the assault at issue allegedly occurred during a medical procedure during which Chavez alleged she was improperly left alone with him by CCA officers, not while working alongside him, as did the other Plaintiffs' alleged assaults), is impermissible "bad act" evidence, and would require a trial-within-a trial, as Defendants would be forced to attack the credibility of Ann Chavez' allegations.

Plaintiffs respond, *inter alia,* that Ann Chavez' testimony will be relevant to the question of whether CCA was negligent in its operation of the medical unit, and will help corroborate their testimony, to the extent that Defendants seek to argue that Plaintiffs' stories are manufactured and/or that Bustamante was not left alone with Plaintiffs.  Plaintiffs also contend that Chavez can testify as to her "experience and perception regarding CCA's retaliation against

10

inmates who report sexual abuse," which would be probative of Jaramillo's retaliation claim.

While the Court is inclined to find Ann Chavez' testimony to be relevant, it will refrain from ruling on the instant motion at this time. Plaintiffs will have the opportunity to seek admission of Chavez' testimonial or other evidence at trial – assuming they have laid the proper foundation and the evidence is offered in an appropriate context. Likewise, the Court will refrain from ruling on that portion of Defendants' motion that seeks to preclude evidence of Chavez' settlement negotiations with Defendants, which could be admissible depending on the proffered context. *See* F.R.E. 408 (b) (noting few exceptions to the general prohibition against introduction of compromise offers and negotiations). Accordingly, the parties are once again instructed to alert the Court prior to introducing any testimonial or extrinsic evidence at trial relating to Ann Chavez' former claims or subsequent settlement, at which time the Court will make a ruling depending on the evidence and context in which it is offered. Moreover, the parties are hereby instructed not to mention Ann Chavez' evidence during voir dire or opening statements.

## VII. Plaintiffs' Opposed Motion in Limine to Exclude Any and All Evidence Related to Lisa Jaramillo's Refusal to Submit to Polygraph Testing

Plaintiffs move the Court to exclude from trial any and all evidence relating to Lisa Jaramillo's refusal to submit to a polygraph examination requested by the NMCD investigator charged with investigating Plaintiffs' rape allegations. While the investigator ultimately found that Bustamante took Jaramillo into an unauthorized area, Jaramillo's refusal to take a polygraph led him to conclude that her allegations could not be substantiated. In support of the instant motion, Plaintiffs argue that (1) even if the test had been taken, it would have been unreliable, and thus inadmissible in this Circuit; (2) that Jaramillo's refusal to submit to a polygraph during

11

the NMCD's investigation, which was completed with CCA's escorting Bustamante off the premises of the NMWCF, is not an operative fact in the instant case foe retaliation and negligence; and (3) that the prejudice to Jaramillo in allowing such evidence would outweigh its probative value. Plaintiffs further contend that, in the event the Court admits the evidence in issue, Plaintiffs should be permitted as an "alternative remedy" to call a rebuttal witness who would testify to the unreliability of a polygraph administered in a penal setting, and to introduce sections of the NMCD investigator's report that would support their claims, in addition to evidence that Bustamante's own polygraph exam did not include questions about his being alone with inmates in unauthorized areas.

Defendants respond that Jaramillo's refusal to submit to a polygraph is relevant to the question of whether CCA's alleged failure to either (a.) investigate security breaches committed by Bustamante in the facility or (b.) forward Plaintiffs' allegations to outside law enforcement were insufficient measures. Defendants argue that the reliability of a polygraph examination is not at issue, and that any suggestion that Jaramillo's refusal originated with concerns about polygraph reliability is belied by evidence of a telephone transcript in which she gives another reason, which Defendants note is admissible as the admission of a party opponent. Finally, Defendants contend that Plaintiffs' proposed "alternative remedy" – that, if the refusal is allowed in, so should be the NMCD investigator's report and Bustamante's own polygraph test – would be overly broad and confusing.

Plaintiffs fail to meet their burden of showing how Jaramillo's refusal to submit to a polygraph is inadmissible.[3] Thus, the Court finds that Defendants should be permitted to

---

[3]Plaintiffs argue at some length about the 10th Circuit's general policy against the introduction of polygraph results – which would allow a jury to infer guilt on the strength of an

introduce such evidence, and the jury allowed to draw whatever inference it will from the evidence and Jaramillo's testimony relating to her refusal.

With respect to Plaintiffs' proposed alternative remedy, the Court finds that Plaintiffs should be permitted to support their theory as to why Jaramillo refused the examination by calling an expert witness to testify as to polygraph reliability. However, because it is unclear how evidence relating to unidentified portions of the NMCD investigation report and the questions asked of Bustamante at his polygraph are relevant to resolution of the instant claims, the Court will hold this portion of Plaintiffs' motion requesting this "alternative relief" in abeyance. Accordingly, the parties must alert the Court prior to introducing any evidence relating to the NMCD report or Bustamante's polygraph, at which time the Court will make a ruling depending on the evidence and context in which it is offered. Moreover, the parties are hereby instructed not to mention such evidence during voir dire or opening statements.

## **CONCLUSION**

**IT IS THEREFORE ORDERED THAT:**

(1)  *Defendants' Motion in Limine No. 1 to Admit Evidence of Plaintiffs' Counsel's Advancement of Settlement Proceeds or Loans to Plaintiffs* (Doc. 307) is **DENIED;**

---

examination of dubious reliability – which the Court finds is a separate issue from a refusal to submit to a polygraph, and any inferences to be drawn therefrom. The Court is unpersuaded by Plaintiffs' attempt to rely on *Jones v. Geneva Pharmaceuticals, Inc.*, 132 Fed. Appx. 772, 776 (10th Cir. 2005) (unpublished), in which the 10th Circuit held that a plaintiff's offer to submit to a polygraph was inadmissible where the plaintiff offered the evidence for the purpose of "intend[ing] the jury to presume that her submission to a polygraph would have revealed the truth," yet did "not wish to demonstrate the polygraph's reliability or effectiveness." In *Jones*, the plaintiff wanted the best of all worlds – an inference that she was willing to tell the truth and "an end run around *Daubert*." *Id.* Here, Plaintiffs are not barred from showing, via expert testimony, that the purported unreliability of a polygraph administered in a penal setting might have accounted for Jaramillo's refusal to submit to one.

(2) *Defendants' Motion in Limine No. 2 to Preclude Any Argument, Evidence or Testimony Relating to the Sufficiency of the Investigation Into Mr. Bustamante's Alleged Conduct* (Doc. 308) is **taken under advisement;**

(3) *Defendants' Motion in Limine No. 3 to Preclude Any Argument, Evidence or Testimony Relating to Other Settled Lawsuits or Claims Made by Non-Party Inmates, Including Claims Made By Dismissed Party Mary Lou Collins* (Doc. 309) is **taken under advisement** with respect to the claims contained in Lisa Jaramillo's report to CCA employees, which resulted in her segregation; and is in all other respects **GRANTED;**

(4) *Defendants' Motion in Limine No. 4 to Preclude Any Argument, Evidence or Testimony Relating to a 2003 National Institute of Corrections Report* (Doc. 311) is **GRANTED;**

(5) *Defendants' Motion in Limine No. 5 to Preclude Any Argument, Evidence, or Testimony Relating to Segregation Placement Sheets, or Any Other Disciplinary or Institutional File Documents of Non-Party Inmates* (Doc. 312) is **GRANTED;**

(6) *Defendants' Motion in Limine No. 6 to Preclude Any Argument, Evidence or Testimony Relating to Ann Chavez' Claims or Settlement* (Doc. 313) is **taken under advisement;**

(7) *Plaintiffs' Opposed Motion in Limine to Exclude Any and All Evidence Related to Lisa Jaramillo's Refusal to Submit to Polygraph Testing* (Doc. 310) is **DENIED**; as to the "alternative remedy" requested by Plaintiffs, should their motion be denied, Plaintiffs' request to introduce testimony relating to the reliability of polygraph testing is **GRANTED**; Plaintiffs' additional request to introduce evidence relating to the NMCD investigator's report and Roger Bustamante's polygraph examination is **taken under advisement.**

_____
Judith C. Herrera
United States District Court Judge

14