## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**LISA JARAMILLO and KIM CHAVEZ,**

       **Plaintiffs,**

**vs.**                                  **CIV No. 09-634 JCH/WDS**

**ARLENE HICKSON, ROBERT
ULIBARRI, LINDA HERNANDEZ,
and CORRECTIONS CORPORATION
OF AMERICA,**

       **Defendants.**


### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Lisa Jaramillo's *Motion for Fees and Expenses* (Doc. 409).  This case was tried before the undersigned U.S. District Judge from November 5, 2012 -November 15, 2012, at the conclusion of which the jury returned a verdict in favor of Jaramillo on her retaliation claim against Individual Defendants Arlene Hickson and Robert Ulibarri.  The jury further awarded Jaramillo $6,000 in compensatory damages and $60,000 in punitive damages.  Now, Plaintiffs' counsel seek to recover an award of attorneys' fees and gross receipts tax for their efforts on behalf of Jaramillo.  *See* Doc. 435 at 8-13 (Plaintiffs' reply brief conceding various ways in which $413,526.66 total fee request set forth in their opening brief could be reduced, but failing to provide a revised total sum).  After reviewing the evidence and arguments of the parties and their counsel, the Court concludes that the motion for attorneys' fees should be granted, although the amount of fees awarded should be reduced to reflect, *inter alia,* the jury's mixed verdict, as described below.

**DISCUSSION**

While the general rule in our legal system is that each party must pay its own attorney's fees and expenses, *see Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), Congress enacted 42 U.S.C. § 1988 in order to ensure that federal rights are adequately enforced.  The purpose of an award of attorney's fees under § 1988 is to ensure "effective access of the judicial process" for persons with civil rights grievances.  *Id.*; *see also Gudenkauf v. Stauffer Communications, Inc.*, 158 F.3d 1074, 1081 (10th Cir. 1998).  Section 1988 provides that a prevailing party in certain civil rights actions may recover "a reasonable attorney's fee as part of the costs."  Thus, the award of fees is a two-step process.  *Hensley*, 461 U.S. at 429-430; *Jane L. v. Bangerter*, 61 F.3d 1505, 1509 (10th Cir. 1995). First, the court must determine whether an applicant is a prevailing party.  *Id.*  Second, the court must determine what is a reasonable fee.  *Id.*  In order to arrive at a reasonable fee, courts generally use the "lodestar," which is the "product of the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'"  *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (citing *Hensley*, 461 U.S. at 433).

**I.  Prevailing Party**

The Supreme Court has held that "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."  *Hensley*, 461 U.S. at 429, 103 S. Ct. 1933. "[P]laintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir. 1978), *overruled on other grounds by Richardson v. Miller*, 279 F.3d 1, 4 (1st Cir. 2002)) (internal quotation marks omitted).  Put

another way, a plaintiff is a prevailing party when the "actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying defendant's behavior." *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992); *see also Sole v. Wyner*, 551 U.S. 74, 127 S.Ct. 2188, 2194 (2007) ("The touchstone of the prevailing party inquiry . . . is the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.") (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)).  In *Farrar*, the Court explicitly held that an award for nominal damages serves to alter the legal relationship between the parties such that the plaintiff must be considered a prevailing party. 506 U.S. at 112, 113 S.Ct. 566 ("We therefore hold that a plaintiff who wins nominal damages is a prevailing party under § 1988.").  *See also Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1229 (10th Cir.2001) ("'[N]ominal relief does not necessarily a nominal victory make.' ") (quoting *Farrar*, 506 U.S. at 121 (O'Connor, J., concurring)).

Defendants do not dispute that Plaintiff Jaramillo was the prevailing party at trial, and is entitled to an award of attorneys' fees as such.  Defendants argue, however, that the over $400,000 in total fees requested by Plaintiffs' counsel are so vaguely worded as to include recovery for fees accrued working on claims against an entirely different group of Defendants ("the CMS Defendants"), with whom Plaintiffs settled prior to trial; fees for Plaintiff Kim Chavez' claims, on which she failed to prevail; and Jaramillo's state law claim against Defendant CCA, on which she failed to prevail.

Plaintiffs concede, as they must, that Jaramillo was the sole prevailing party in this case, but urge the Court not to engage in the kind of "line-item micromanagement upon which courts frown" by "attempt[ing] to carve the time counsel spent working on this case into two 'cuts': time related to Plaintiff's retaliation claim [on which she prevailed] and time unrelated to her

retaliation claim [i.e., time spent on the claims on which Plaintiff failed to prevail]."  (Doc. 435 at 3-4).

Because the jury's verdict finding in favor of Plaintiff Jaramillo on her retaliation claim and imposing compensatory and punitive damages on Defendants Hickson and Ulibarri altered the legal relationship between the three parties, the Court finds that Plaintiff Jaramillo is a prevailing party entitled to an award of reasonable attorneys' fees.  The Court will not, however, require Defendants to reimburse Plaintiffs for their efforts on claims unrelated to the sole claim on which Jaramillo prevailed.  *See Fox v. Vice,* __ U.S. __, 131 S. Ct. 2205, 2214 (2011) (court should compensate plaintiff for the time her attorney spent in achieving favorable outcome, but should not compensate for "work performed on claims that bore no relation to the grant of relief.").

**II.  Lodestar Calculation of Reasonable Attorneys' Fees**

The parties agree that the proper method for determining the fee award in this case is the "lodestar" – for each attorney, the product of her "reasonable hourly rate" and the number of hours she 'reasonably expended" on the case.  *Robinson,* 160 F.3d at 1281.

**A.  Reasonable Hourly Rates**

The Court next turns to the determination of a reasonable hourly rate for each member of Plaintiffs' counsel team: attorneys Maureen Sanders, Laura Schauer Ives, Mark Fine, and Leon Howard; and paralegal Andrew Polnett.

**<u>Attorney Maureen Sanders</u>**

Plaintiffs request compensation at the rate of $350 per hour for attorney Maureen Sanders, which they seek to support by the affidavits of Sanders and Plaintiffs' attorney's fee

expert, Philip B. Davis.  *See* Doc. 409 Ex. 4 Sanders Aff. ¶¶ 1-14) (describing Sanders' thirty-plus years' experience in the private bar and legal academia, and how requested rate represents natural increase from 2005 award of $250 hourly rate by this Court); *Id.* Ex. 9 Davis Aff. ¶ 14 (describing the "depth and diversity of Ms. Sanders' litigation experience [a]s nearly unparalleled in this jurisdiction").

Defendants respond that a reasonable hourly rate for Sanders is $275 an hour. Defendants fail to offer a specific reason why their proposed hourly rate is appropriate to an attorney of Sanders' background and experience in the local market.  Rather, they offer a global citation to an order awarding attorney's fees to plaintiffs in another action against CCA heard in the District of New Mexico, *Spurlock v. Townes,* Civ. No. 09-786 WJ/SMV (Memorandum Opinion and Order on Plaintiffs' Motion for Attorney Fees) (Doc. 357).  Defendants' attempt to rely on *Spurlock* is somewhat confusing, in light of the fact that the trial court in that case awarded attorneys with comparable experience to Sanders, Paul Kennedy and Mary Han, respective hourly rates of $375 and $350.  *Id.* at 12-13.  Defendants do not explain why Sanders should be awarded a lower hourly rate than Kennedy or Han.

The Court finds that Sanders' requested $350 hourly rate is reasonable and appropriate. *See Lewis v. N.M. Dep't of Health*, 2005 U.S. Dist. LEXIS 40572, Civ. No. 99-0021, (Memorandum Opinion and Order at 13-14, 19) (D.N.M. January 5, 2005) (awarding the same hourly rate to Sanders and Paul Kennedy).

## **Attorney Laura Schauer Ives**

Plaintiffs request compensation at the rate of $250 per hour for attorney Laura Schauer Ives.  In support of the suggested rate, Plaintiffs proffer Ives' testimonial evidence that she

graduated from law school in 2000, has significant trial experience in the areas of civil rights and plaintiff's-side civil litigation, and has served as the Legal Director of the New Mexico chapter of the ACLU since 2012.  (Doc. 409 Ex.1 Ives Aff. ¶¶3, 6).  Plaintiffs also proffer the opinion of their fee expert, Davis, that the hourly rate of "$250 for Ms. Ives [is] fair and reasonable," in light of her relevant litigation experience.  *Id.* Ex. 9 Davis Aff. ¶¶ 11, 15.

Defendants respond that a reasonable hourly rate for Ives is $185, again pointing generally to *Spurlock*, in which the trial court awarded six plaintiff's attorneys hourly rates ranging from $150 per hour to $375 per hour.  The Court notes, however, that the court's order awarding attorneys' fees in *Spurlock* did not explain how the awarded rates were arrived at, nor did it discuss the credentials or relevant experience of the individual attorneys.  It is thus unclear how Defendants seek to rely on *Spurlock* as support for reducing Ives' typical hourly rate.

The Court finds that an appropriate hourly rate for Ives is $250. *See New Mexico Youth Organized v. Herrera,* Civ. No. 08-1156 JCH/WDS (Order Granting Attorneys' Fees and Costs, 11/18/09) (Docs. 32, 41) (awarding a 2001 law school graduate with significant pertinent experience his requested hourly rate of $225); *State Farm Mutual Ins. Co. v. Luebbers,* Civ. No. 2001-07534 (2nd Jud. Dist. Ct., N.M.) (1/25/10) (awarding $225 hourly rate to plaintiff's attorney with five years' relevant experience).[1]

### Attorney Mark Fine

Plaintiffs request compensation at the rate of $250 per hour for attorney Mark Fine, who graduated from law school in 2000, and began his own criminal defense and civil rights practice

---

[1] Ives and Fine point to the fee matrix employed by this Court in *Valdez v. Herrera,* Civ. No. 09-668 JCH/DJS (Order Granting Attorneys' Fees, 3/21/11) (Doc. 149) (awarding fees of $300 per hour for associates who graduated between 1996 and 2000), as evidence of their billing judgment.  However, the Court observes that, unlike the comparatively straightforward retaliation claim on which Plaintiff Lisa Jaramillo prevailed in the instant action, *Valdez* was a complex case involving several state actors' alleged violations of the National Voter Registration Act. Consequently, the Court's fee analysis in *Valdez*, which established hourly rates for 19 attorneys, did not announce default standard fees for the local market.

in 2006.  *See* Doc. 409 Ex. 5, Fine Aff. ¶¶ 2-10 (detailing Fine's relevant experience, including designation as a civil rights and personal injury "Super Lawyer" in 2012, though not proffering evidence of his awarded rates in past cases); *see also id.* Ex. 9, Davis Aff. ¶ 15 (opining that Fine's conducting of depositions in this case "was thoughtful and skillful in the extreme," and noting that his requested rate "is actually below the rate of $300 this Court awarded to lawyers who graduated in 1996-2000" in *Valdez*).  Defendants contend that a reasonable hourly rate for Fine is actually $225, but again rely on their general cite to *Spurlock* as the only support for their proposed rate.

For the reasons set forth above, with respect to Ives – who graduated from law school the same year as Fine, and has similar legal experience -- the Court finds that Fine's proposed hourly rate of $250 is reasonable and appropriate.

### Attorney Leon Howard

Plaintiffs request compensation at the rate of $180 per hour for attorney Leon Howard, who "graduated from law school approximately a year and a half prior" to his work on this case. (Doc. 409 Ex.1 Ives Aff. ¶ 11).  Ives further asserts that Howard has received his proposed rate in "at least" three settlements, though she does not identify the cases to which she refers.  *Id.* Defendants respond that Howard should be compensated at the rate of $150 per hour, because "[t]wo lawyers with considerably more experience" were awarded $175 per hour in *Spurlock,* in 2012.  (Doc. 419 at 8 n.7).  (The Court notes, however, that while two attorneys were indeed awarded $175 per hour in *Spurlock*, the court did not address their legal experience in its opinion, and Defendants fail to proffer evidence that those attorneys had "considerably more experience" than Howard).

The Court finds that an appropriate hourly rate for Howard is $160.

**Paralegal Andrew Polnett**

Plaintiffs seek compensation for paralegal Andrew Polnett at the hourly rate of $64.50. In support of Polnett's proposed rate, Plaintiffs proffer Ives' affidavit testimony that Polnett has worked as a paralegal at the ACLU of New Mexico since 2009, has been a member of the Paralegal Division of the State Bar since March 2010, and has been certified by the National Association of Legal Assistants since November 2011. (Doc. 409 Ex.1 Ives Aff. ¶ 12).

The Court finds Polnett's proposed rate to be reasonable for the Albuquerque market and his level of experience. *See Copar Pumice Co., Inc. v. Allan Morris, et al.*, Civ. No. 07-00079 JB/ACT (6/13/12 Memorandum Opinion and Order) (Doc. 211 at 36) (approving $75 hourly rate for paralegals in local market); *Pena v. Belen Consolidated, et al.*, Civ. No. 04-01352 LFG/RLP (4/3/06 Memorandum Opinion and Order) (Doc. 56 at 16) (same).

**B.     Hours Reasonably Expended by Plaintiff's Counsel**

Plaintiffs' counsel team submits the following hours as reasonably expended in pursuit of Jaramillo's retaliation claim: Maureen Sanders -- 166.9 hours; Laura Schauer Ives – 387.2 hours; Mark Fine -- 691.1 hours; Leon Howard – 49.9 hours; Andrew Polnett – 165.6 hours. *See* Doc. 409 at 11-12; Doc. 435 at 9-10 (updating billing entries). The Court finds that counsel's hours should be reduced for limited success, as described below.

**Counsel's Efforts on Plaintiffs' Unsuccessful Claims Were Mostly Unrelated to Their Efforts on Jaramillo's Successful Claim**

It is undisputed that Plaintiffs' counsel seeks to be compensated for time spent on claims other than the sole claim on which Jaramillo prevailed at trial. However, Plaintiffs offer three reasons why the hours spent on Jaramillo's successful retaliation claim "cannot – in theory or practice – be divorced from the hours spent preparing and trying Ms. Jaramillo's and Ms. Chavez' negligence claims." (Doc. 409 at 7). While the Court agrees that "a mathematical

8

approach" to reducing the fee award, "comparing the total number of issues in the case with those actually prevailed upon," would be inappropriate and unworkable, it nevertheless finds Plaintiffs' arguments in favor of not reducing (and/or enhancing) their counsel's billable hours to be mostly without merit.  *See Hensley*, 461 U.S. at 435 n.11 (internal quotation omitted).

First, Plaintiffs contend that Jaramillo's and Kim Chavez' "testimony and credibility on the subject of the sexual abuse that formed the basis of [their negligence] claims were essential to the success" of the former's retaliation claim.  (Doc. 409 at 7).  Plaintiffs do not follow up this statement by proffering explanation or evidence supporting their position, and the Court will not comb through the record in an effort to explore and support Plaintiffs' theory.

Second, Plaintiffs contend that, because the jury relied on Kim Chavez' testimony – that Chavez did, in fact, kiss a CCA Corrections Officer, as reported by Jaramillo to CCA staff, and failed to corroborate Jaramillo's report due to fear that she too would be placed in disciplinary segregation – in finding in Jaramillo's favor on her retaliation claim, the fact that Chavez herself did not prevail on her own claims "does not operate to render the attorney hours devoted to preparing for or adducing Ms. Chavez' testimony somehow unreasonable."  *Id.* at 8.  The Court agrees that counsel may recover fees for time spent preparing Kim Chavez for trial, and notes as a practical matter that it would be essentially impossible to delineate the time spent preparing Chavez to testify regarding her own unsuccessful claims from Jaramillo's retaliation claim. However, the Court finds that Plaintiffs' fee award should not reflect recovery for fees incurred developing Chavez' claims in other respects.

Third, Plaintiffs suggest that the Court cannot rightly divorce their attorneys' efforts on their unsuccessful claims from their efforts on behalf of Jaramillo's successful retaliation claim, because Defendants' own trial strategy blurred any distinction between them.  Plaintiffs refer to

what they characterize as Defendants' efforts throughout trial to cast Jaramillo "as a prison kingpin" who attempted to manipulate two separate situations to her advantage -- one involving allegations of sexual misconduct and contraband smuggling between a CCA employee and inmates (facts relating to the unsuccessful negligence claims), and the other involving Jaramillo's alleged attempt to intimidate Kim Chavez into corroborating her report (facts relating to Jaramillo's successful retaliation claim). *Id.,* quoting Ex. 10 Tr. at 21:10 (Defense counsel arguing that "this case is about the hustle"). Plaintiffs then conclude, in general fashion, that "[a]ll testimony that supported Jaramillo's account of events" – presumably including the time spent developing Jaramillo's account of sexual misconduct in the prison medical unit – "was critical to dispelling Defendants' 'hustle' theory." *Id.* at 9.

The Court disagrees. Plaintiffs do not explain, let alone show, how time spent developing a theory of negligence rejected by the jury was critical to demonstrating that Jaramillo's testimony was worthy of belief with regard to a wholly distinct claim involving mostly different actors and centered on different events. Because Plaintiff fails to show how work on their unsuccessful claims was "expended in pursuit of the ultimate result achieved," the Court finds that Plaintiffs' fee award should be reduced accordingly. *Hensley,* 461 U.S. at 435 (quotation omitted).

### Counsel's Fee Award Does Not Qualify for a Contingency Enhancement

In the event that the Court reduces their fee award to reflect the jury's mixed verdict, Plaintiffs contend that their attorneys' fees should be enhanced based on the significant risk of not prevailing that they assumed when they agreed to take the instant case on a contingency. Plaintiffs point to *Homeward Bound, Inc. v. Hissom Memorial Center,* 963 F. 2d 1352 (10th Cir. 1992), in which the Tenth Circuit held that the strong presumption that the lodestar figure

represents a reasonable fee could be overcome in exceptional circumstances "based on the risks of a particular case." *See id.* at 1356 (affirming district court order denying request for enhanced fee award where plaintiffs showed they faced difficulty finding counsel and that lawyers in the relevant market generally would not take cases on contingency basis absent a fee enhancement, but failed to show a real risk of not prevailing at trial); *see also Pa. v. Del. Valley Citizens' Council for Clean Air,* 483 U.S. 711, 728 (1987) ("*Delaware Valley II*") (contingency enhancement "should be reserved for exceptional cases where the need and justification for such enhancement are readily apparent and are supported by evidence in the record and specific findings by the courts.") (plurality opinion).  In evaluating whether a fee award in a contingency case should be enhanced due to a risk of not prevailing, a trial court should proceed "with caution," and "view the litigation as it reasonably should have appeared to the lawyers at the outset of the litigation." *Homeward Bound,* 963 F. 2d at 1356 (quotations omitted).

Plaintiffs suggest that their counsel's fees should be enhanced because Lisa Jaramillo's retaliation claim "depended on a core and contentious factual dispute over Defendants' motivation" that placed her "at a real risk of not prevailing." *See* Doc. 409 at 10.  Plaintiffs further proffer Jaramillo's deposition, in which she describes how she unsuccessfully sought representation from three attorneys before Mark Fine agreed to take her case. *Id.* Ex. 8.  Plaintiffs do not offer any additional argument or explanation tending to show how the nature of Jaramillo's retaliation claim made her prospects for success at trial particularly risky.

The Court disagrees that Plaintiffs' fee award should be enhanced due to a risk of non-recovery.  With regard to her successful retaliation claim, the record in the instant case showed that Plaintiff Jaramillo was segregated from the general population for 92 days for an offense for which she was subsequently vindicated.  The administrative (pre-hearing) portion of her

segregation was supported only by a placement form completed by Defendant Ulibarri explaining that she was being held pending a disciplinary hearing, despite the fact that the underlying offense was not of a nature typically justifying such placement.  While Ulibarri speculated on the witness stand that he might have had a number of non-retaliatory reasons for approving Jaramillo's segregation that would have justified the placement – though he admitted not being able to recall which of them was the real reason -- he did not indicate any such reason on the placement form.  The jury further heard Jaramillo testify that Defendant Hickson confronted her about her report before the internal investigation into her allegations was complete, and attempted to blame her for attempting to create trouble for a CCA employee; Hickson did not specifically deny the encounter occurred.  Thus, the Court concludes that, while every contingency case inevitably carries with it some level of risk that the attorneys engaged will not be compensated, under the facts of the instant case, Plaintiff Jaramillo had little risk of not prevailing on her retaliation claim against at least one of the Individual Defendants.

Equally important, evaluating the instant case as it appeared to counsel at the outset of the litigation, the Court notes that Jaramillo and her multiple Co-Plaintiffs asserted a number of claims against multiple Defendants, some of whom they settled with prior to trial.  The CMS Defendants' willingness to settle with Jaramillo rather than litigate this case to a verdict similarly undermines Plaintiffs' argument that Jaramillo's attorneys assumed a significant risk of failure in agreeing to represent her.

Accordingly, Plaintiffs' attorneys' fees will not be enhanced on account of counsel risk.

### Determining Counsel's Reasonably Expended Hours

In their response to the instant motion, Defendants offer numerous objections as to how

Plaintiffs' proposed fee award, in addition to seeking recovery for work on unrelated claims, is otherwise unreasonable for containing entries that are allegedly duplicative, vague, or excessive. *See* Doc. 419 Ex. A, Parts 1-3 (Defendants' itemized objections to counsel's billing entries). Indeed, Defendants question "whether Plaintiff Jaramillo required three attorneys, and at times four, to defend her § 1983 claims, which were not particularly complex or novel," and complain that a number of entries are so vague "that it cannot be determined what claim, or even what Plaintiff, the entry relates to." *Id.* at 6.

The Court has reviewed Defendants' objections and finds that many of them have merit. Plaintiffs' billing is replete with entries for work on their unsuccessful claims and/or on behalf of parties who settled out of the instant litigation long before it went to trial, *see, e.g.,* Doc. 409 Ex. 4 at 3 (Sanders billing for e-mails and telephone calls regarding the deposition of erstwhile Plaintiff Mary Lou Collins, who apparently was never deposed), *Id.,* Ex. 2 at 2 (Ives billing 7.6 hours for "research re PLRA and exhaustion/sexual assault"); entries billing for time spent in travel at counsel's full requested hourly rates;[2] and entries so general as to potentially apply to any number of claims that were disposed of via settlement or summary judgment, or which did not prevail with the jury, *see, e.g., id.* Ex. 4 at 3 (Sanders billing for "meeting with co-counsel regarding claims and status").

Because the Court finds that it cannot, and should not, attempt to arrive at a mathematically precise fee award by line-item deduction or adjustment of every challenged billing entry, it will exercise its discretion to reduce Plaintiffs' counsel's requested hours by a fixed percentage of 40% per attorney.

---

[2] *See, e.g., Kee v. Smith,* Civ. No. 02-1243 JCH/RHS (10/31/06 Memorandum Opinion and Order) (Doc. 139 at 6-7) (applying a 50% reduction for attorney time spent in transit).

**<u>Plaintiffs' Counsel's Submitted Expenses</u>**

Finally, Plaintiffs seek reimbursement for expenses incurred during the course of litigation.  In the time since the instant motion was filed, the Clerk of Court has addressed this portion of Plaintiffs' request in its March 13, 2013 *Second Clerk's Order Settling Costs* (Doc. 438).  Because Plaintiffs may not obtain a double recovery, the Court need not reach the issue of Plaintiffs' expenses in resolving the instant motion.

## CONCLUSION

In light of the foregoing, the Court awards Plaintiff Lisa Jaramillo attorneys' fees as follows:

(1) For Maureen Sanders, 100.14 hours at $350 per hour, for a total of $35,049.00;

(2) For Laura Schauer Ives, 232.32 hours at $250 per hour, for a total of $58,080.00;

(3) For Mark Fine, 414.66 hours at $250 per hour, for a total of $103,665.00;

(4) For Leon Howard, 29.94 hours at $160 per hour, for a total of $4,790.40;

(5) For Andrew Polnett, 99.36 hours at $64.50 per hour, for a total of $6,408.72;

(6) 7% New Mexico gross receipts tax on the foregoing for a total tax of $14,559.52.

**IT IS THEREFORE ORDERED** that Plaintiffs' *Motion for Fees and Expenses* (Doc. 409) is **GRANTED** as explained above, and the Court awards Plaintiffs' counsel a total of $222,552.64 in attorneys' fees and taxes.

Judith C. Herrera
United States District Court Judge

14